**Affirmed and Memorandum Opinion filed June 20, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00106-CV

---

## NATALYA READ, Appellant

### V.

## STEPHEN SIBO, Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2016-01772**

---

## MEMORANDUM OPINION

Pro se appellant Natalya Read appeals from the trial court's interlocutory order denying her motion to compel arbitration of appellee Stephen Sibo's claims against her. Finding no error, we affirm the trial court's order denying Read's motion to compel arbitration.

### BACKGROUND

Sibo began loaning Read money in 2009. They executed a loan agreement

in July 2009. Read promised in this loan agreement to repay Sibo $50,000 plus interest. While Read made some payments on that debt, she failed to make all of the required monthly payments. Sibo and Read then signed a second loan agreement in February 2010. (In the second loan agreement, Read promised to repay Sibo $82,500 plus interest.[1] Read was to make $2,500 monthly installment payments. The second loan agreement provided for a 2% late charge for any late installment payments. Neither of the loan agreements contain an arbitration clause. Sibo continued to loan Read additional money, which Sibo labeled "microloans," after the second loan agreement was signed. This additional amount totaled $175,343. While Read made some payments to Sibo, these amounts remained largely unpaid.

In late 2013 and early 2014, Read convinced Sibo to fund TerraStoch, Inc., a software start-up company, through loans totaling $57,508.60. Among other agreements, Sibo and TerraStoch entered into a Restricted Stock Purchase Agreement, which contains an arbitration agreement.[2] Read, as president of TerraStoch, hired Sibo as TerraStoch's director of operations.

Faced with Read's failure to repay the debt she personally owed to him, and the lack of progress in getting TerraStoch started as a functioning business, Sibo informed Read that he would not be providing additional funds. Read then terminated Sibo's TerraStoch employment. As a result of the deteriorating relationship, Sibo filed suit against both Read and TerraStoch in January 2016. Sibo sued Read, individually, alleging breach of the second loan agreement and failure to repay the microloans. In addition, Sibo sued both Read and TerraStoch

---

[1] The $82,500 included $32,000 remaining from the July 2009 loan agreement plus an additional $50,000 loan.

[2] Sibo eventually purchased a total of 800,000 shares of TerraStoch common stock. The record indicates that he paid a total of $80.00 for the shares.

2

for common law and statutory fraud, as well as alleged violations of the Texas Securities Act, and the Deceptive Trade Practices Act for their actions related to getting the TerraStoch business up and running. Read and TerraStoch separately filed general denials.

Read's and TerraStoch's attorneys withdrew their representation for non-payment of fees. Later, a new law firm entered an appearance on behalf of both Read and TerraStoch. Read and TerraStoch filed their first Motion to Compel Arbitration and Stay Proceedings in October 2016. They did not, however, set the motion for submission or oral hearing. Read and TerraStoch's second set of attorneys withdrew in early 2017. The trial court required TerraStoch to retain counsel within 45 days of the trial court's order. The record does not indicate whether TerraStoch ever complied with this order. Read did not retain new counsel; she proceeded pro se from that point forward.

Sibo eventually filed a motion for partial summary judgment on his breach of contract claim against Read individually. The trial court granted Sibo a partial summary judgment on his breach of contract claim against Read in the amount of $279,351.83. Read filed a motion asking the trial court to reconsider the partial summary judgment. While her motion to reconsider was pending, Read filed a notice of interlocutory appeal to this court. The trial court passed the scheduled hearing on Read's motion to reconsider in light of Read's pending interlocutory appeal. This court dismissed Read's interlocutory appeal of the partial summary judgment for lack of jurisdiction. *See Read v. Sibo*, No. 14-17-00731-CV, 2017 WL 5472826, at *1 (Tex. App.—Houston [14th Dist.] Nov. 14, 2017, no pet.) ("Neither appellant's brief nor the record in this case indicates that the order at issue here corresponds to one of the appealable interlocutory orders identified in section 51.014(a)."). The trial court subsequently denied Read's motion to

reconsider.

Sibo later filed a motion for final summary judgment on all of his remaining claims against Read and TerraStoch. Sibo set his motion for submission in December 2017. The trial court has not yet ruled on the motion, so Sibo's partial summary judgment remains an interlocutory order. Only at this point-in-time, nearly two years after the start of the litigation, did Read file her second motion to compel arbitration.[3] This time, Read set her motion to compel arbitration for oral hearing. After filing her second motion to compel arbitration, Read filed a motion for sanctions against Sibo and his counsel, which the trial court ultimately denied. The trial court denied Read's motion to compel arbitration and Read filed her notice of interlocutory appeal soon thereafter.

## ANALYSIS

Read brings three issues on appeal.[4] In her first two issues, Read once again tries to challenge the interlocutory partial summary judgment order signed by the trial court on June 8, 2017. Because that order remains interlocutory, we do not have jurisdiction to address Read's issues challenging it. *See Read*, 2017 WL 5472826, at *1. We therefore turn to Read's third issue, in which she challenges the trial court's denial of her second motion to compel arbitration, which we do have jurisdiction to address. Tex. Civ. Prac. & Rem. Code § 51.016; *Branch Law Firm, L.L.P. v. Osborn*, 532 S.W.3d 1, 10 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

**I.    The trial court did not abuse its discretion when it denied Read's**

---

[3] Read was the only defendant to file the second motion to compel arbitration.

[4] TerraStoch is not a party to this appeal and Read cannot present arguments on its behalf. *See Sherman v. Boston*, 486 S.W.3d 88, 95–96 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("As a result, courts hold that a non-attorney representative cannot appear for a limited liability company or present a claim on its behalf.").

4

**motion to compel arbitration.**

## A. Standard of review and applicable law

We review the trial court's order denying Read's motion to compel arbitration under an abuse-of-discretion standard, deferring to the trial court on factual determinations that are supported by the evidence and reviewing legal determinations de novo. *See Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Smart Call, LLC v. Genio Mobile, Inc.*, No. 14-13-00223-CV, 2014 WL 3955083, at *4 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, pet. denied) (mem. op.). A party cannot be forced to arbitrate absent a binding agreement to do so. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 632 (Tex. 2018). Thus, a party seeking to compel arbitration has the burden first of establishing the existence of a valid arbitration agreement. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). A trial court's determination regarding the existence of an agreement is a legal question that we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

In determining whether an agreement to arbitrate exists, courts apply ordinary principles regarding contract formation. *See J.M. Davidson*, 128 S.W.3d at 227 ("Arbitration agreements are interpreted under traditional contract principles."). The primary concern in construing the contract is to ascertain the intention of the parties as expressed in the agreement. *Jody James Farms*, 547 S.W.3d at 633 ("Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms.").

The evidentiary standards applicable to a motion to compel arbitration are the same as those applicable to a motion for summary judgment. *In re Estate of Guererro*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). Thus, a party moving to compel arbitration must present proof

that an agreement to arbitrate exists and requires arbitration of the dispute.  *Id.*

## B.  The second loan agreement does not contain an arbitration clause.

To the extent Read argues on appeal that the trial court abused its discretion when it denied her motion to send Sibo's breach of contract claim arising out of the second loan agreement and microloans to arbitration, we disagree.  We begin by pointing out that the second loan agreement does not contain an arbitration clause.  It also does not mention TerraStoch.  Despite that, Read argues on appeal that a signatory to an arbitration agreement, such as Sibo, cannot avoid arbitration when his right to recover, and his damages, "depend on the agreement containing the arbitration clause."

Assuming without deciding that, in her individual capacity, Read is a party who can seek to compel arbitration pursuant to those contracts, we conclude that she has not shown an abuse of discretion by the trial court.  None of the TerraStoch documents containing arbitration clauses referenced by Read mention the personal loans from Sibo to Read.  Instead, those arbitration agreements were limited to disputes related to the specific contract in which the clause was included.[5]  To compel arbitration of the personal loan dispute because the TerraStoch stock

[5] Read references only the TerraStoch Restricted Stock Purchase Agreement in her appellate briefing.   That contract's arbitration clause is limited to disputes "arising out of, relating to, or resulting from this agreement."   Sibo's personal loans to Read predate this agreement.   Read also did not present any evidence in her motion establishing a connection between the stock purchase agreement and Sibo's personal loans to her.  There are two additional TerraStoch agreements with Sibo containing arbitration clauses.  Both are similarly limited.  The first, Sibo's Consulting Agreement, requires arbitration only of "any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of this Agreement . . . ."   The second, Sibo's Employee Proprietary Information Agreement, provides that arbitration is required for "any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance, or breach of this agreement, or otherwise relating to my employment with the company . . . ."   Sibo's claims against Read seeking repayment of his personal loans to her, do not relate in any way to the subjects covered by these latter contracts.

purchase agreement contains an arbitration clause, would effectively require this court to rewrite both the second loan agreement and the stock purchase agreement. *See In re Merrill Lynch Trust Co., FSB*, 235 S.W.3d 185, 191 (Tex. 2007). This we cannot do. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998) (stating that courts cannot make contracts for the parties). We conclude that Sibo's breach of contract claim against Read seeking repayment of the personal loans he made to her, does not depend on any contract containing an arbitration agreement. *See In re Rubiola*, 334 S.W.3d 220, 226 (Tex. 2011) ("To determine whether a claim falls within the scope of the agreement, courts must focus on the factual allegations of the complaint rather than the legal causes of action asserted.") (internal quotation marks omitted). We therefore hold that the trial court did not abuse its discretion when it denied Read's second motion to compel arbitration with respect to Sibo's breach of contract claim.

## II. Read waived arbitration of Sibo's claims arising out of his loans to, and investment in, TerraStoch.

We turn next to Sibo's remaining claims against Read, which relate to his investment in, and loans to TerraStoch. Assuming without deciding that these claims fall within the scope of the arbitration clause in the Restricted Stock Purchase Agreement between Sibo and TerraStoch, and that Read, who signed the agreement as TerraStoch's president, is a party who properly may seek to compel arbitration of Sibo's claims against her related to his involvement with TerraStoch pursuant to the arbitration clause, we now consider whether Read waived her right to arbitration.

Waiver of arbitration is a question of law that this Court reviews de novo. *Perry Homes,* 258 S.W.3d at 598; *In re Bruce Terminix Co.,* 988 S.W.2d 702, 703–04 (Tex. 1998) (orig. proceeding) (per curiam). Arbitration rights are contractual,

7

and the law includes a strong presumption against the waiver of those rights. *See Bruce Terminix,* 988 S.W.2d at 704. When presented with questions of waiver, we are required to resolve any doubts in favor of arbitration. *In re Oakwood Mobile Homes,* 987 S.W.2d 571, 574 (Tex. 1999) (orig. proceeding) (per curiam), *abrogated in part on other grounds by In re Halliburton Co.,* 80 S.W.3d 566, 572 (Tex. 2002) (orig. proceeding). The standard for determining waiver is the same under federal and state law. *See Holmes, Woods & Diggs v. Gentry,* 333 S.W.3d 650, 654 (Tex. App.—Dallas 2009, no pet.). Waiver may be implied from a party's conduct, so long as that conduct is unequivocal. *Perry Homes,* 258 S.W.3d at 593. In close cases, the strong presumption against waiver should govern. *Id.* Finally, to establish waiver, the party opposing arbitration must prove that it would suffer prejudice if the case was sent to arbitration. *Id.*

Courts analyze whether waiver of arbitration has occurred on a case-by-case basis, based on the totality of the circumstances presented. *Perry Homes*, 258 S.W.3d at 591. The Supreme Court of Texas has determined that "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration, only on the eve of trial would be sufficient" to establish waiver of a right to arbitration. *Id.* at 590 (internal quotation marks omitted). The court recognized, however, that a case rarely presents all of these factors. *Id.* at 591. It therefore stated that when determining whether a party has waived an arbitration clause, courts can consider numerous factors, including: (1) how long the movant knew of the arbitration clause; (2) how long the movant delayed before seeking arbitration; (3) the amount of the movant's pretrial activity related to the merits rather than arbitrability or jurisdiction; (4) the amount of discovery conducted and who initiated it; (5) what discovery, if any, would be unavailable in arbitration; (6) whether activity in court would be duplicated in arbitration; (7) whether the

8

movant filed affirmative claims or dispositive motions; (6) how much time and expense has been incurred in the litigation; (7) whether the movant sought or opposed arbitration earlier in the case; and (8) when the case was to be tried. *See id.* at 591–92. The supreme court has recognized that waiver of arbitration "involves substantial invocation of the judicial *process*, not just judgment on the merits." *Id.* at 592. It also pointed out that substantial invocation "depends very much on the context; three or four depositions may be all the discovery needed in one case, but purely preliminary in another." *Id.* at 593. In addition to substantial invocation of the judicial process by the party seeking arbitration, the Supreme Court of Texas also requires the party opposing arbitration to show that the movant's conduct has "caused it to suffer detriment or prejudice." *G. T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015).

It is undisputed that Read knew various arbitration agreements existed from the beginning of the litigation. Despite that knowledge, Read waited nearly two years before filing her motion to compel arbitration, which she brought to the trial court's attention. *See Murphree v. Cooper*, No. 14-11-00416-CV, 2012 WL 2312706, at *1 (Tex. App.—Houston [14th Dist.] June 19, 2012, no pet.) (mem. op.) ("Showing that a motion was filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling."). While Read previously had filed a motion to compel arbitration, about ten months after Sibo filed his lawsuit against her and six months after she had filed her answer, she never presented the motion to the trial court for a ruling.

Prior to the filing of her second motion to compel arbitration, much had happened in the case. The parties had conducted discovery, including discovery Read had served. Sibo had obtained a partial summary judgment on his breach of

9

contract claim against Read personally. Read had sought reconsideration of the trial court's decision, and even had attempted to appeal the trial court's interlocutory order, all without mentioning the existence of the various arbitration agreements. *See Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 650 (Tex. App.— Dallas 2011, pet. denied) ("Although the rule-12 motion and Adams's immediate detour to the appellate court did not implicate the merits of the underlying dispute, the journey delayed and frustrated the trial court's ability to resolve the case and increased the litigation costs for the parties."). It was only after Sibo filed his motion for final summary judgment, approximately twenty-three months after the lawsuit was initiated, that Read filed her second motion to compel arbitration and brought it to the trial court's attention by setting it for a hearing. Even then, Read continued to participate in the litigation process, and even sought affirmative relief by filing a motion for sanctions against Sibo. *See CTL/Thompson Texas, LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 300 (Tex. 2013) (stating, in a case addressing effect of a nonsuit, that a motion for sanctions is a claim for affirmative relief). Read then filed an "Emergency Motion for Expedited Discovery" to obtain discovery relevant to her motion for sanctions. Finally, Sibo already has incurred approximately $18,500 in legal fees prosecuting his claims against Read and TerraStoch.

We conclude that, based on the totality of the circumstances, Sibo established Read substantially invoked the judicial process. *See Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 791 (Tex. App.—El Paso 2015, no pet.) ("Further, in light of the fact that Ms. Hogg admittedly knew about the arbitration clause from the outset of the litigation, we conclude that her conscious and informed decision to litigate her dispute in a judicial proceeding and to invoke the arbitration clause only after receiving the trial court's adverse ruling was more

10

consistent with a late game tactical decision than a true intent to preserve the right to compel arbitration.") (internal quotation marks omitted); *Adams*, 344 S.W.3d at 650 (concluding party seeking arbitration substantially invoked the judicial process); *Citizens Nat'l Bank v. Bryce*, 271 S.W.3d 347, 356 (Tex. App.—Tyler 2008, no pet.) (concluding party requesting arbitration substantially invoked judicial process by, among other things, participating in discovery and waiting twenty months after start of litigation to seek arbitration).

Sibo also was required to show that he would be prejudiced if the dispute was sent to arbitration. *Perry Homes*, 258 S.W.3d at 595. In this context, prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue. *Id.* at 597 n.93. Seeking arbitration only after that party has received an adverse ruling can establish prejudice. *Hogg*, 480 S.W.3d at 794. Such an action prejudices the nonmovant because it deprives "the plaintiff of benefits of the summary judgment order that had been entered in her favor." *Id.* at 795 (citing *Sedillo v. Campbell*, 5 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). Because Sibo would have to re-litigate the issues resolved by the partial summary judgment and incur additional legal fees in the process, we conclude that he established he would be prejudiced if the dispute was sent to arbitration. We hold that the trial court did not err when it determined that Read waived arbitration of her dispute with Sibo. *See G. T. Leach Builders, LLC*, 458 S.W.3d at 512. We therefore overrule her third issue.

**CONCLUSION**

Having overruled Read's third issue, the only issue necessary to resolve the appeal, we affirm the judgment of the trial court. *See* Tex. R. App. P. 47.1.


/s/    Jerry Zimmerer
        Justice


Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.